*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 04a0394p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

LATONYA INGE,

                                *Plaintiff,*

JODY HOLMAN,                                    No. 03-1816

                  *Plaintiff-Appellant,*

      *v.*

ROCK FINANCIAL CORPORATION,

                  *Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Michigan at Lansing.
No. 99-00064—Wendell A. Miles, District Judge.

Argued: September 15, 2004

Decided and Filed: November 12, 2004

Before: BOGGS, Chief Judge; CLAY, Circuit Judge; HAYNES, District Judge.[*]

---

## COUNSEL

**ARGUED:** Christopher G. Hastings, DREW, COOPER & ANDING, Grand Rapids, Michigan, for Appellant. George G. Kemsley, BODMAN, LONGLEY & DAHLING, Detroit, Michigan, for Appellee. **ON BRIEF:** Christopher G. Hastings, John E. Anding, DREW, COOPER & ANDING, Grand Rapids, Michigan, for Appellant. James J. Walsh, BODMAN, LONGLEY & DAHLING, Ann Arbor, Michigan, for Appellee.

---

## OPINION

---

      CLAY, Circuit Judge. Plaintiff Judy Holman appeals the May 27, 2003 order of the district court denying her motion for leave to file a fourth amended complaint under the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), and the March 31, 2003 order granting Defendant Rock Financial Corporation's motion for summary judgment and denying Plaintiff's cross-motion for summary judgment and motion for class certification. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

---

    [*]The Honorable William J. Haynes, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation.

# I.
## *Background*

The background facts of this litigation are more fully set forth in the Court's published opinion in *Inge v. Rock Financial Corp.*, 281 F.3d 613, 615-17 (6th Cir. 2002) (hereafter "*Inge I*"). Suffice it to say that Plaintiff Judy Holman borrowed money from Defendant, a real estate lender, to refinance the purchase of her home. In making and settling the loan, Defendant assessed Plaintiff certain fees as part of Defendant's finance charge. Prior to closing the loan, Defendant disclosed some, but not all, of these fees to Plaintiff. Specifically, the HUD-1 settlement statement provided to Plaintiff at closing identified two previously undisclosed fees: a charge of $120 for "Document preparation" and a charge of $200 to the Title Office for "Settlement or closing." Plaintiff Holman and LaTonya Inge (no longer part of this litigation) then filed a five-count complaint, styled as a class action, asserting various state law causes of action against Defendant. They subsequently amended the complaint to add TILA claims. The district court dismissed Plaintiff's second amended complaint on the merits and denied leave to file a third amended complaint that purportedly cured the defects in the prior complaint.

On appeal in *Inge I*, this Court noted that the TILA requires a creditor to disclose its estimated finance charge when extending credit to a consumer in a residential mortgage transaction. *Inge I*, 281 F.3d at 619 (citing 15 U.S.C. §§ 1638(a)(3), (b)(2)). Further, a creditor who fails to make the required disclosures is liable to the consumer for damages, costs, and attorney fees. *Id.* (citing § 1640(a)). Although the TILA permits a creditor to exclude document preparation fees from estimated finance charges, 15 U.S.C. § 1605(e)(2), Regulation Z, promulgated by the Federal Reserve Board and appearing at 12 C.F.R. § 226, clarifies that document preparation fees are excludable only "if the fees are bona fide and reasonable." 12 C.F.R. § 226.4(c)(7)(ii). In addition, the TILA excludes settlement fees imposed by third party closing agents from the definition of "finance charge," but only if "'the creditor does not require the imposition of the charges for the services provided and does not retain the charges.'" *Id.* (quoting 15 U.S.C. § 1605(a)).[1]

Plaintiff Judy Holman's second amended complaint alleged that Defendant had failed to disclose its fees for "document preparation" and "settlement or closing" as part of its finance charge and demanded damages. *Inge I*, 281 F.3d at 619. Plaintiff alleged that Defendant's document preparation fee was not bona fide and reasonable because Defendant prepared the mortgage and promissory note but retained a fee in excess of Defendant's cost. *Id.* She further alleged that Defendant (the creditor) required the services for which the settlement or closing fee was imposed and, therefore, Defendant violated the TILA when it failed to disclose the settlement fee as a finance charge. *Id.*

Defendant argued, and the district court agreed, that Plaintiff's second amended complaint failed to state a claim with regard to the bona fides of the document preparation fee because Plaintiff was required to allege that the amount Defendant disclosed as the finance charge varied from the amount it actually charged by more than $100, pursuant to the "Tolerances for accuracy" provision of TILA, 15 U.S.C. § 1605(f).[2] *Id.* at 620. On appeal, this Court reversed the district court because § 1605(f) "'treats disclosure variances as 'accurate' if within the $100 tolerance, but does not include any language explicitly absolving creditors from liability." *Id.* at 621 (quoting § 1605(f)(1)). The Court held that § 1605(f) does

---

[1]The Court explained this requirement as follows: "'If the creditor required a third party to perform a service, is aware that the third party will perform the service, and imposes a separate charge on the consumer for the performance of the service, the fee is a disclosable finance charge.'" *Id.* at 623 (quoting *O'Brien v. J.I. Kislak Mortgage Corp.*, 934 F. Supp. 1348, 1357 (S.D. Fla. 1996); citations omitted in *Inge I*). *See also* 12 C.F.R. § 226, Supp. I, Official Staff Interpretations, § 226.4(a)(2)2 ("If the creditor requires the use of a closing agent, fees charged by the closing agent are included in the finance charge only if the creditor requires the particular service, requires the imposition of the charge, or retains a portion of the charge. Fees charged by a third-party closing agent may be otherwise excluded from the finance charge under [12 C.F.R.] § 226.4.").

[2]*See* 15 U.S.C. § 1605(f)(1)(A) (providing that a creditor's finance charge disclosure "shall be treated as being accurate ... if the amount disclosed as the finance charge ... does not vary from the actual finance charge by more than $100.").

not impose an independent pleading hurdle for TILA plaintiffs, but rather, is a potential affirmative defense. *Id.* at 621-22.

The Court buttressed its conclusion by citing the statements of Senator Sarbanes offered during Senate consideration of the 1995 amendments to the TILA:

> This bill increases the tolerance for statutory damages, lifting the bar that determines what constitutes a violation....
> This increased tolerance for errors is intended to protect lenders from the small errors of judgment that occurred in the *Rodash* [*v. AIB Mortgage Co.*, 16 F.3d 1142 (11th Cir. 1994)] case.[3] It is obviously not intended to give lenders the right to pad fees up to the tolerance limit of $100. For example, if a delivery associated with the closing cost on a home mortgage costs $30, $30 should be charged and disclosed as part of the finance charge. A lender cannot arbitrarily raise an additional $70 simply because there is a wider tolerance.

*Id.* at 622 (quoting 141 Cong. Rec. S14567 (daily ed. Sept. 28, 1995) (statement of Senator Sarbanes)). The Court observed that Senator Sarbanes's comments reinforce the Congressional intent to balance the need to protect consumers from questionable lending practices against the need to shield lenders from challenges to their disclosure practices that only "minimally deviate[] from the actual amount charged" – i.e., practices that represent no more than a $100 variance between actual and disclosed finance charges. To strike this balance, the Court held that Plaintiff need not plead a variance greater than $100, yet afforded Defendant the option to plead the $100 tolerance limit as an affirmative defense. *Id.*

Defendant further argued in *Inge I* that the allegations of Plaintiff's second amended complaint failed to state a TILA disclosure claim because Defendant was under no obligation to include the fees for "document preparation" and "settlement or closing" in its presettlement disclosures. The Court agreed with Defendant only with respect to the settlement or closing fees. *Id.* As to the document preparation fee issue, Defendant argued that it was insufficient for Plaintiff to allege that the document preparation fee, which Defendant imposed ostensibly to cover its costs of preparing the mortgage and promissory note, exceeded Defendant's actual cost of preparing the note and mortgage, without also alleging that Defendant's charges differed from those of other local businesses. *Id.* at 623. The Court held that "Plaintiff could conceivably have alleged the unreasonableness of the fees with more detail and specificity, but we do not conclude that her merely describing the fees as 'not bona fide and reasonable' fails to state a claim as a matter of law." *Id.* (citations omitted). The Court noted, however, that the issue of the fee's reasonableness might be "resolvable on summary judgment after discovery." *Id.*

As to the settlement fee issue, the Court noted that "a creditor has fairly broad, but not unlimited, authority to exclude lump sum charges for services provided by third parties," such as a lump sum charge for a lawyer or title company conducting or attending a closing. *Id.* at 624. However, the charge must be "primarily" for excludable services; that is, services related to the preparation or review of documents involving the title or loan on the property. *Id.* (quoting 12 C.F.R. § 226, Supp. I, Official Staff Interpretations, § 226.4(c)(7)2). The Court held that for Plaintiff to claim that Defendant violated TILA by excluding the lump settlement or closing fee paid to a title company primarily for services that allegedly were not excludable, "Plaintiff needed, at a minimum, to identify the service provided by the Title Company." *Id.* at 624-25. "In the absence of any allegation of what non-excludable service the Title Company provided, Plaintiff's second amended complaint failed to state a TILA violation arising out of undisclosed fees for 'settlement or closing.'" *Id.* at 625.

---

[3]In *Rodash*, the Eleventh Circuit held that the lender violated the TILA when it disclosed a $22 Federal Express fee to pay off the plaintiff's existing mortgage, as well as a $204 "Florida intangible tax," as "amount[s] financed" rather than as "finance charge[s]. *Rodash*, 16 F.3d at 1147-49.

The Court then reversed the district court's refusal to permit Plaintiff to file a third amended complaint. *Id.* FED. R. CIV. P. 16(b) requires a district court to enter a scheduling order for matters such as amendments to the pleadings and indicates that the order "shall not be modified except upon a showing of good cause." The Court found that Plaintiff had good cause to amend her complaint after the December 1, 1999 deadline because she had acted diligently in seeking to file an additional amended pleading; her request to amend was a prompt effort to remedy pleading deficiencies identified by the district court in the dismissal order; and the amendment would not prejudice Defendant. *Id.* at 625-26. Further, based on its earlier holding concerning the TILA's "Tolerances for accuracy" provision, the Court held that the district court erred in refusing permission to amend on the ground that Plaintiff had failed to plead a variance between disclosed and actual fees exceeding $100. *Id.* at 626. The Court ordered that "[o]n remand, the district court shall permit Plaintiff to file her third amended complaint." *Id.* The Court noted, however, that "Plaintiff's third amended complaint does not alter her allegations pertaining to fees charged for settlement or closing, and therefore does not affect [the] conclusion that she has not properly pleaded a violation of the TILA with regard to those fees." *Id.* at 626 n.4.

The Court filed its opinion in *Inge I* on February 26, 2002. The district court received the opinion on February 28, 2002, and on April 9, 2002, the district court granted Plaintiff's motion for leave to file her third amended complaint, pursuant to this Court's order in *Inge I*. Because the district court could not locate the original of the third amended complaint, it asked Plaintiff to submit another original, signed version of the pleading. Counsel for Plaintiff, however, did "not wish to endorse a draft of the Third Amended Complaint" that this Court reviewed and found partially deficient in *Inge I*. Instead, on April 16, 2002, Plaintiff filed a self-styled "renewed motion for leave to file a third amended complaint." The motion attached a revised version of the third amended complaint that purportedly corrected the defect this Court found with regard to the settlement fee claim. The revised complaint alleged, in relevant part:

> The "Settlement or closing" fee assessed by Rock Financial was for a service required by Rock, and was not primarily for an excludable activity; rather the fee was primarily for the following non-excludable activities:
>
> (a)     Witnessing execution of closing documents;
> (b)     Disbursing settlement proceeds; and
> (c)     Recording mortgage and/or discharge of mortgage.

Plaintiff's motion to amend was ripe for decision in early May, 2002.[4] The court did not rule on Plaintiff's motion to amend for ten months, during which the parties completed expert discovery and prepared cross-motions for summary judgment on the only claim Plaintiff was able to present without a decision on the motion – the "document preparation" fee claim. On March 31, 2003, the district court denied Plaintiff's renewed motion for leave to file her third amended complaint. The court held that Plaintiff's motion was in reality a motion seeking leave to file a fourth amended complaint because it was not the same complaint that was the subject of this Court's decision in *Inge I*. The court found that Plaintiff had "already endorsed the Third Amended Complaint by virtue of filing her original, signed motion … seeking leave to file that pleading" and by appealing the court's decision denying leave to file that complaint. The court also expressed the view that it would be in violation of this Court's order in *Inge I* not to file the third amended complaint that was the subject of *Inge I*. The court therefore denied Plaintiff's motion to file a fourth amended complaint, without prejudice to her right to re-file her motion under Federal Rule of Civil Procedure 15.

---

[4]Plaintiff argues that her motion to amend was ripe for decision as of November 21, 2002, the date she purportedly filed her reply brief. However, the docket sheet shows that the November 21, 2002 reply brief related to a different motion. From our review of the docket sheet, it appears that Plaintiff never filed a reply in support of her motion to amend. Accordingly, the motion became ripe some time in May, when the time for filing a reply brief expired.

Also on March 31, 2003, the court ruled on the parties' cross-motions for summary judgment on Plaintiff's claim based on the document preparation fee and on Plaintiff's motion for class-certification. Because Plaintiff had not yet sought leave to file a fourth amended complaint containing new allegations about Defendant's fee for settlement costs, the court ruled that the issue of the settlement fee was not properly before it. The court found that there was no evidence that Defendant's document preparation fee was unreasonable "'given the prevailing practices in the relevant market.'" (J.A. 324.) (quoting *Brannam v. Huntington Mortgage Co.*, 287 F.3d 601 (6th Cir. 2002)). Plaintiff's expert on the issue, Thomas Myers, opined that Defendant's fees were unreasonable based on the practices of a limited number of third-party document preparation service providers. According to the court, however, Myers's analysis was flawed under *Brannam* because he failed to compare Defendant's fees within the relevant market – that of lenders, not the market consisting of third-party document preparation service providers. Even accepting, *arguendo*, Myers' opinion that Defendant's document preparation fee was $70 higher than the reasonable market price, the court found that Plaintiff could not premise a TILA claim on this fact because the TILA tolerates up to a $100 variance between the actual and disclosed fees under 15 U.S.C. § 1605(f)(1)(A). The court also denied Plaintiff's motion for class certification because she had failed to plead a claim capable of surviving summary judgment.

On April 3, 2003, Plaintiff filed a motion for leave to file a fourth amended complaint. Plaintiff's supporting brief consisted of three short paragraphs spanning less than a half of a page. Plaintiff argued that she should be permitted to file yet another amended complaint because the district court "vault[ed] form over substance" by rejecting Plaintiff's revised third amended complaint purportedly on the ground that it was actually a fourth amended complaint. To justify the filing of a fourth amended complaint, Plaintiff's entire argument consisted of the following sentence: "Plaintiff relies upon Fed. R. Civ. P. 15(a) and the February 26, 2002 Opinion and Judgment of the Sixth Circuit in this action in support of her motion for leave to amend."

The court denied Plaintiff's motion on May 27, 2003 because she could not satisfy the standard for amendment under FED. R. CIV. P. 15(a). The court noted that the case was no longer at the pleading stage when Plaintiff sought leave to file a fourth amended complaint, but rather, discovery had closed even before the first appeal. The court therefore held that, "in evaluating plaintiff's proposed amendment for futility, it is apparent that plaintiff's proposed fourth amended complaint must be able to survive not merely a Rule 12 motion, but rather a Rule 56 motion for summary judgment." (J.A. 335.) (citing *Republic Nat'l Bank v. Hales*, 75 F. Supp. 2d 300, 308-09 (S.D.N.Y. 1999)). The court then noted that the $200 closing fee charged to Plaintiff was set by and paid to The Title Office, the company that conducted the closing of Plaintiff's loan. Consistently, Plaintiff's proposed complaint alleged that the closing was held at The Title Office, and Plaintiff's Settlement Statement indicates that the "settlement or closing" fee was paid to The Title Office. The TILA makes it clear, however, that fees for title-related services and the preparation of loan-related documents are excluded from the computation of the finance charge. (J.A. 337-38.) (citing 15 U.S.C. §§ 1605(e)(1), (e)(2), (e)(5); 12 C.F.R. § 226.4(c)(7)). Accordingly, the court held that Plaintiff's proposed amendment would be futile.

The district court also ruled that amendment was not appropriate in light of Plaintiff's "repeated failure to cure deficiencies, undue delay, and prejudice." Although this Court in *Inge I* viewed Plaintiff's motion to file a third amended complaint as a "prompt effort to remedy pleading deficiencies identified by the district court in the dismissal order," *Inge I*, 281 F.3d at 626, Plaintiff failed to include the amendment to the "settlement or closing fee" claim set forth in the proposed fourth amended complaint. Instead, Plaintiff waited until after her appeal, wherein this Court held that the "settlement or closing fee" claim was deficient. Relying on *Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968, 971 (6th Cir. 1973), the district court found that amendment would be unfair to Defendant because Plaintiff was attempting to litigate the same claim that this Court already had found to be deficient. Plaintiff could not justify her purported need to amend on difficult heightened pleading requirements or on the ground of newly discovered evidence. For these reasons, and because amendment would have been futile in any event, the district court denied Plaintiff leave to file her proposed fourth amended complaint.

On June 25, 2004, Plaintiff appealed the May 27, 2003 order denying her motion for leave to file a fourth amended complaint and the March 31, 2003 order granting Defendant's motion for summary judgment and denying Plaintiff's cross-motion for summary judgment and her motion for class certification.

## II.
### *Denial of Leave to Amend Complaint*

### A.      Standard of Review

After a responsive pleading has been filed to a complaint, Federal Rule of Civil Procedure 15(a) provides that a party may file an amended complaint "only by leave of court or by written consent of the adverse party." FED. R. CIV. P. 15(a). Rule 15(a) provides that such "leave shall be freely given when justice so requires." *Id.* Rule 15 "reinforce[s] the principle that cases 'should be tried on their merits rather than the technicalities of pleadings," *Moore v. City of Paducah,* 790 F.2d 557, 559 (6th Cir. 1986) (quoting *Tefft v. Seward,* 689 F.2d 637, 639 (6th Cir. 1982)), and therefore assumes "a liberal policy of permitting amendments." *Ellison v. Ford Motor Co.,* 847 F.2d 297, 300 (6th Cir. 1988). "Except in cases where the district court bases its decision on the legal conclusion that an amended complaint could not withstand a motion to dismiss, [this Court] review[s] a district court's denial of leave to amend for abuse of discretion." *Morse v. McWhorter,* 290 F.3d 795, 799 (6th Cir. 2002) (citing *Monette v. Elec. Data Sys. Corp.,* 90 F.3d 1173, 1188 (6th Cir. 1996)).

### B.      Analysis

One of the issues examined by this Court in *Inge I* was the district court's refusal to permit Plaintiff to file a third amended complaint adding new allegations regarding Defendant's document preparation fee and its $200 "settlement or closing" fee. The Court ordered that "[o]n remand, the district court shall permit Plaintiff to file her third amended complaint." *Inge I*, 281 F.3d at 626. The Court added, however, that "Plaintiff's third amended complaint does not alter her allegations pertaining to fees charged for settlement or closing, and therefore does not affect [the] conclusion that she has not properly pleaded a violation of the TILA with regard to those fees." *Id.* at 626 n.4. The Court filed its opinion in *Inge I* on February 26, 2002, and consistent with that opinion, the district court on remand granted Plaintiff's motion for leave to file her third amended complaint on April 9, 2002.

One week later, Plaintiff filed a self-styled "renewed motion for leave to file a third amended complaint," which the court appropriately treated as a motion to file a fourth amended complaint because this Court previously had ordered the district court to accept the filing of Plaintiff's third amended complaint. Although Plaintiff correctly states that the district court did not rule on her motion to amend for ten months, this delay is irrelevant. Discovery largely had been completed prior to the first appeal in *Inge I*. Only expert discovery remained. Thus, the ten-month period during which Plaintiff's motion remained pending had no effect on the progress of the case. Accordingly, we hold that the district court did not abuse its discretion when it denied Plaintiff's "renewed motion to file a third amended complaint," without prejudice to her right to re-file her motion under Federal Rule of Civil Procedure 15.

When Plaintiff filed her motion to file a fourth amended complaint, she included virtually no supporting argument, only one sentence referring to Rule 15 and the decision in *Inge I*. Plaintiff did not attempt to articulate the theories supporting leave to amend in any fashion, nor did she address the issues of delay, prejudice, or futility. Thus, the motion could have been denied on this ground alone.

Moreover, the record amply supported the district court's conclusion that Defendant would have been unduly prejudiced by yet another amendment to Plaintiff's complaint. First, Plaintiff sought leave to amend after all significant discovery had been completed and after the dispositive motion cut-off date. Second, and most importantly, Plaintiff was attempting to continue to litigate the "settlement or closing" fee claim after an unsuccessful appeal regarding that claim; this Court already had held the claim to be deficient as set forth in both the second and third amended complaints. Under these circumstances, the

district court did not abuse its discretion in denying Plaintiff leave to amend. *See Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 459 (6th Cir. 2001) (affirming denial of leave to amend sought a year-and-a-half after filing of complaint because of "significant prejudice to the defendant"; the dispositive motion deadline had passed, the defendant had filed a motion for summary judgment on all claims alleged in the original complaint, and significant discovery already had been completed); *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306-07 (6th Cir. 2000) (upholding denial of leave to amend complaint where amendment was sought more than a year after original complaint was filed, summary judgment had been granted to Defendants two months earlier, and plaintiff was attempting to add a new legal theory); *Troxel*, 489 F.2d at 971 (holding that district court did not abuse its discretion in denying leave to amend because the plaintiff had proceeded upon one theory through the Court of Appeals where it lost and wanted to repeat the cycle again by alleging a new theory of recovery; finding that cost to defendant of having to defend against new theory was sufficient prejudice).

The district court also held that granting Plaintiff leave to file a fourth amended complaint would have been futile. *E.g.*, *Parry,* 236 F.3d at 307 (affirming denial of leave to amend because amendment would not have stated a claim for relief). Because the district court properly denied leave to amend on other grounds, we need not address this alternative ground for denying leave to amend.

### III.
### *Summary Judgment on Document Preparation Fee Claim*

**A.     Standard of Review**

The Court reviews a district court's grant of summary judgment *de novo*. *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1009 (6th Cir. 1997). A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). All evidence must be viewed in the light most favorable to the nonmoving party. *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995). However, "[t]he moving party need not support its motion with evidence disproving the nonmoving party's claim, but need only show that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "[W]here the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, he must show in opposition to the motion for summary judgment that he can produce evidence which, if believed, will meet the higher standard." *Moore, Owen, Thomas & Co. v. Coffey,* 992 F.2d 1439, 1444 (6th Cir. 1993) (internal quotation marks and citations omitted).

**B.     Analysis**

The Federal Reserve Board's Regulation Z provides that document preparation fees are excludable only "if the fees are bona fide and reasonable." 12 C.F.R. § 226.4(c)(7)(ii). Plaintiff alleged that Defendant's $120 document preparation fee was not bona fide and reasonable because Defendant prepared the mortgage and promissory note but retained a fee in excess of Defendant's cost. *Inge I*, 281 F.3d at 619. The TILA does not define the term "bona fide," but Regulation Z instructs that terms not defined by the TILA are to be given their meaning under state law or contract. 12 C.F.R. § 226.2(b)(3). The Michigan Court of Appeals, in a TILA case, recently held that the "term 'bona fide' means made or done in good faith, without deception or fraud, authentic, genuine, real." *Cowles v. Bank West*, 687 N.W.2d 603, ___ (Mich. Ct. App. 2004) (citing *Random House Webster's College Dictionary* (1997)). With regard to the TILA, the court held that "a document preparation fee is not bona fide, authentic, or genuine, if it includes charges for items other than document preparation." *Id.*

### 1.     Bona fides of the fee

Plaintiff argues that Defendant could not even identify for what services it charged the $120 document preparation fee.  It appears, however, that Plaintiff has misrepresented the record.  Laurie Fletcher, an operations manager with Defendant, testified that the document preparation fee was for the preparation and review of the closing documents, which included the note, the mortgage, the Truth In Lending disclosure, the notice of assignment, the notice of rescission, and a number of other documents.

Plaintiff also argues that Defendant represented to her that the document preparation fee was used to cover the cost of using an outside company to prepare the loan closing documents, quoting a definition from Defendant's Rockloans.com webpage as it appeared in 2000.  *See* J.A. 574  ("Occasionally we use outside companies to prepare the loan closing documents.  This fee covers the cost of this service.").  Defendant explains that it stopped routinely charging a document preparation fee in the year 2000, and when it does, it uses a third-party.  At the time Plaintiff secured her loan in 1998, however, Defendant conducted document preparation services in-house.  Plaintiff has not disputed this fact.  Thus, the cited webpage is irrelevant.

Plaintiff has not cited the Court to any evidence in the record that Defendant's $120 document preparation fee was not bona fide in the sense that it included charges for services other than document preparation.  Indeed, Plaintiff's proposed fourth amended complaint alleges that Defendant prepared the promissory note and mortgage that she signed at closing.  *See*  J.A. 429, ¶ 18.  Rather, Plaintiff's claim is that the fee exceeded Defendant's cost of using outside companies to prepare loan documents. In other words, Plaintiff does not claim that the fee was for something other than document preparation, only that the fee was excessive.  Plaintiff's argument, therefore, goes to the reasonableness of the document preparation fee, not its bona fides.

### 2.     Reasonableness of the fee

In *Brannam v. Huntington Mortgage Co.*, *supra*, this Court set out the method for analyzing the reasonableness of a document preparation fee.  In that case, the plaintiffs alleged that a mortgage company's $250 document preparation fee was not "bona fide and reasonable in amount," as required by 12 C.F.R. § 226.4(c)(7), "because document preparation services are available on the Internet for substantially less than $250." *Brannam*, 287 F.3d at 602.  The Court rejected the argument that, for a mortgage lender's document preparation fee to be reasonable, the lender "may only charge as a document preparation fee the amount of the lender's actual costs for preparing loan related documents." *Id.* at 606.  Instead, the Court held that "the fee should be considered reasonable if it was for a service actually performed and reasonable in comparison to the prevailing practices of the industry in the relevant market." *Id.*  Moreover, "[t]hat document preparation services are offered on the Internet for substantially less does not create an issue of fact as to reasonableness." *Id.*   "The relevant inquiry is not whether [the lender] has used the cheapest third-party service available to it anywhere, but whether the fee is reasonable given the prevailing practices in the relevant market," meaning reasonable given "the prevailing practices of the industry in the locality." *Id.* (citation omitted).

Plaintiff claims that Defendant's $120 document preparation fee was unreasonable as compared to the fee charged by third-party service providers.  Plaintiff argues that it was appropriate to assess the reasonableness of Defendant's document preparation fee by comparing it to comparable fees charged by non-lenders, relying on Defendant's webpage from 2000, which indicated that Defendant "[o]ccasionally" may charge a document preparation fee to cover the cost of using an outside company to prepare loan documents. According to Plaintiff, Defendant, via its website, effectively conceded that the relevant market for purposes of determining the reasonableness of the fee was the market of third-party providers of document preparation services.  As noted above, however, there is no evidence that Defendant was using outside companies at the time it processed Plaintiff's loan in 1998.  In fact, it is undisputed that Defendant,

not an outside company, prepared Plaintiff's loan documents. Thus, the cited webpage does not demonstrate that the relevant market for document preparation fees is that of third-party service providers.

The only other market evidence Plaintiff presented regarding Defendant's document preparation fee consisted of the Federal Rule of Civil Procedure 26(a)(2) report of Thomas A. Meyers, Plaintiff's purported expert on "the reasonable market price … for 'Document preparation' services in the Michigan market." Meyers reported that he found "considerable inconsistency and incongruity relating to the treatment and interpretation" of document preparation fees on the part of mortgage lenders in Michigan. He observed that "charges subsumed in the document preparation fee by one lender may not be the same as those included in the document preparation fee of another." Accordingly, Meyers concluded that "no conclusions can be drawn regarding the reasonableness of excludable charges from a comparison of document preparation fees charged by a population of lenders." Meyers then went on to examine the fee charged by providers of mortgage loan document preparation services who "offer a complete set of standard documents necessary to close a loan for a fixed price." Meyers concluded that a reasonable market price for the preparation of mortgage loan closing documents was approximately $50.

Even assuming the validity of Meyers's analysis of third-party providers,[5] we hold that Meyers's expert testimony did not satisfy Plaintiff's burden under *Brannam*. In *Brannam*, the Court held that the fact that "document preparation services are offered on the Internet for substantially less does not create an issue of fact as to reasonableness." *Brannam*, 287 F.3d at 606. "The relevant inquiry is not whether [the lender] has used the cheapest third-party service available to it anywhere, but whether the fee is reasonable given the prevailing practices in the relevant market," meaning reasonable given "the prevailing practices of the industry in the locality." *Id.* (citation omitted). Here, Meyers admitted that he could not draw any conclusion about the reasonableness of the document preparation fees in the relevant geographical market of lenders. Instead, he looked to the fees charged by non-lenders who provide only document preparation services. The *Brannam* Court, however, squarely rejected a market definition that examined the fees charged by non-lenders.

Accordingly, the district court properly held that there was no competent evidence in the record challenging the reasonableness of Defendant's $120 document preparation fee vis-a-vis other lenders in the Western Michigan area. *Cf. id.* ("Because defendant has produced evidence suggesting that $250 is a reasonable fee for document preparation in Western Michigan, and plaintiffs have not produced any evidence to the contrary, we agree with the district court that there is no genuine issue of material fact as to whether the fee was 'reasonable' as required by Regulation Z."). Because there is no genuine issue of material fact as to whether Defendant's document preparation fee was bona fide or reasonable, we affirm the grant of summary judgment for Defendant on the document preparation fee claim.

---

[5]It appears that Meyers conclusion about the $50 average cost of document preparation services by third-party providers is misleading because the third-party providers to which he refers do not necessarily provide the same level of service that Defendant provides. Pricing information about several of these providers indicates that to obtain documents that have been reviewed and verified and, therefore, are "ready-to-close," a consumer would have to spend significantly more money, as much as $144. *See* J.A. 953-62.

**IV.**
*Motion for Class Certification*

We need not address the district court's denial of Plaintiff's motion for class certification because, as held above, the district court appropriately dismissed her complaint on the merits.

**V.**
*Conclusion*

For all the foregoing reasons, we **AFFIRM** the May 27, 2003 order of the district court denying Plaintiff's motion for leave to file a fourth amended complaint and the March 31, 2003 order granting Defendant's motion for summary judgment and denying Plaintiff's cross-motion for summary judgment and motion for class certification.