*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KEVIN NICHOLL, CITY OF LIVONIA
EMPLOYEES RETIREMENT SYSTEM, and
REGINA GERTIL LEE,

        Plaintiffs-Appellants,

v

GARY TORGOW, DAVID T. PROVOST, GARY
S. COLLINS, MAX A. BERLIN, JENNIFER M.
GRANHOLM, PAUL E. HODGES III, RONALD
A. KLEIN, BARBARA J. MAHONE, ROBERT
H. NAFTALY, ALBERT W. PAPA, THOMAS L.
SCHELLENBERG, ARTHUR A. WEISS, and
KEEFE BROYETTE & WOODS, INC.,

        Defendants-Appellees.

UNPUBLISHED
October 17, 2019

No. 344000
Oakland Circuit Court
LC No. 2017-160058-CB

---

*In re* TALMER BANCORP SHAREHOLDER
LITIGATION.

---

CITY OF LIVONIA EMPLOYEES
RETIREMENT SYSTEM and REGINA GERTIL
LEE,

        Plaintiffs-Appellants,

v

CHEMICAL FINANCIAL CORPORATION and
TALMER BANCORP, INC.,

        Defendants,

and

No. 344009
Oakland Circuit Court
LC Nos. 2016-151641-CB;
        2016-151642-CB

-1-

GARY TORGOW, DAVID T. PROVOST, GARY
S. COLLINS, MAX A. BERLIN, JENNIFER M.
GRANHOLM, PAUL E. HODGES III, RONALD
A. KLEIN, BARBARA J. MAHONE, ROBERT
H. NAFTALY, ALBERT W. PAPA, THOMAS L.
SCHELLENBERG, ARTHUR A. WEISS, and
KEEFE BROYETTE & WOODS, INC.,

                Defendants-Appellees.

---

Before:  BORRELLO, P.J., and K. F. KELLY and SERVITTO, JJ.

PER CURIAM.

In these consolidated cases, plaintiffs challenge the trial court's orders granting defendants summary disposition pursuant to MCR 2.116(C)(6) (prior action between the same parties) and (10) (no genuine issue of material fact).  We affirm.

## I.  BASIC FACTS

Plaintiffs are shareholders of Talmer Bancorp, Inc. (Talmer).  The individual defendants (hereafter the "Talmer defendants") are members of Talmer's Board of Directors (the "Board"). Defendant Keefe Broyette & Woods, Inc. (KBW), is an investment bank and advisor.  Before 2015, Talmer's growth strategy involved acquisitions of other regional banking institutions.  In 2015, the Board contemplated entering into a merger or acquisition transaction with another regional banking institution.  Talmer approached Chemical Financial Corporation (Chemical) and five other companies, which we shall refer to as Companies A, B, C, D, and E to preserve confidentiality.  Chemical and Company E were the only companies to express an interest in a transaction with Talmer.  In July 2015, the Board entered into an agreement with KBW whereby KBW would represent Talmer in negotiations with Company E.  KBW had also made contacts with Chemical in 2015 regarding a potential merger with Talmer.  Company E withdrew from negotiations in July 2015.

In December 2015, Talmer entered into an agreement with KBW for KBW to represent Talmer in negotiations with Chemical.  On January 25, 2016, Talmer and Chemical entered into a merger agreement.  The Talmer Board unanimously approved the merger.  A 99% majority of Talmer shareholders also approved the merger.  Chemical compensated Talmer shareholders with consideration of 90% stock and 10 percent cash.  Chemical also offered 25% cash for outstanding stock options.  Defendants Gary Torgow and David Provost were offered positions, respectively, as Chairman and Vice Chairman of Chemical's Board of Directors.

In 2016, plaintiffs Regina Lee and the city of Livonia Employees Retirement System ("CLERS") initiated separate actions against the Talmer defendants for breach of fiduciary duty and against KBW for aiding and abetting the Talmer defendants' breach of fiduciary duty.  These

two actions were consolidated in the trial court (hereafter referred to as the "2016 action" or "2016 litigation"). In 2017, plaintiff Kevin Nicholl initiated a separate action against the same defendants (hereafter the "2017 action" or "2017 litigation"), asserting the same claims as alleged in the 2016 action. An amended complaint added Regina Lee and CLERS as plaintiffs to the 2017 action. The trial court denied plaintiffs' motion to consolidate the 2016 and 2017 actions.

In May 2018, the trial court dismissed Lee and CLERS as plaintiffs in the 2017 action pursuant to MCR 2.116(C)(6) on the ground that they were already engaged in litigation arising from the same transaction. The court also granted summary disposition for all defendants in the 2017 action pursuant to MCR 2.116(C)(10). Plaintiffs appeal this order as of right in Docket No. 344000. In addition, the trial court issued separate orders granting summary disposition for the Talmer defendants and for defendant KBW in the 2016 action, both pursuant to MCR 2.116(C)(10). Plaintiffs Lee and CLERS appeal this order as of right in Docket No. 344009.

## II. BREACH OF FIDUCIARY DUTY

Plaintiffs allege that the Talmer defendants breached their fiduciary duty to shareholders by pursuing the transaction with Chemical against the best interests of the Talmer shareholders, and for the benefit of Provost and Torgow. They further assert that KBW aided and abetted the breach of fiduciary duty in furtherance of its own advantageous relationship with Chemical. Plaintiffs contend that KBW failed to disclose the extent of its contacts with Chemical and its potential conflicts of interest to the full Board and to shareholders. Plaintiffs also submit that a discounted cash flow ("DCF")[1] analysis that KBW prepared for presentation to the Talmer Board and shareholders falsely depressed the value of Talmer's future income by assuming that Talmer would abandon its successful strategy of growing through future acquisitions. Plaintiffs assert that KBW concealed from Talmer shareholders a DCF analysis that projected future growth through acquisitions.

## III. SUMMARY DISPOSITION FOR THE TALMER DEFENDANTS

In both actions, the trial court granted summary disposition in favor of the Talmer defendants and KBW pursuant to MCR 2.116(C)(10). A motion for summary disposition pursuant to MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Woodring v Phoenix Ins Co*, 325 Mich App 108, 113; 923 NW2d 607 (2018). "When reviewing a motion under MCR 2.116(C)(10), this Court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence in favor of the party opposing the motion." *Twp of Williamstown v Sandalwood Ranch, LLC*, 325 Mich App 541, 547 n 4; 927 NW2d 262 (2018) (citation and quotation marks omitted). "The motion is properly granted if (1) there is no genuine issue related to any material fact and (2) the moving party is entitled to judgment as a matter of law." *Id*. "A genuine issue of material fact exists when the record, giving the benefit

---

[1] A discounted cash flow analysis determines the value of a business by estimating its future cash flow, discounted to present value.

of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*. (citation and quotation marks omitted).

The trial court determined that the Talmer defendants were entitled to summary disposition under MCR 2.116(C)(10) because MCL 450.1545a precluded plaintiffs from maintaining their actions. MCL 450.1545a provides:

> (1) A transaction in which a director or officer is determined to have an interest shall not, because of the interest, be enjoined, set aside, or give rise to an award of damages or other sanctions, in a proceeding by a shareholder or by or in the right of the corporation, if the person interested in the transaction establishes any of the following:
>
> (a) The transaction was fair to the corporation at the time entered into.
>
> (b) The material facts of the transaction and the director's or officer's interest were disclosed or known to the board, a committee of the board, or the independent director or directors, and the board, committee, or independent director or directors authorized, approved, or ratified the transaction.
>
> (c) The material facts of the transaction and the director's or officer's interest were disclosed or known to the shareholders entitled to vote and they authorized, approved, or ratified the transaction.
>
> (2) For purposes of subsection (1)(b), a transaction is authorized, approved, or ratified if it received the affirmative vote of the majority of the directors on the board or the committee who had no interest in the transaction, though less than a quorum, or all independent directors who had no interest in the transaction. The presence of, or a vote cast by, a director with an interest in the transaction does not affect the validity of the action taken under subsection (1)(b).
>
> (3) For purposes of subsection (1)(c), a transaction is authorized, approved, or ratified if it received the majority of votes cast by the holders of shares who did not have an interest in the transaction. A majority of the shares held by shareholders who did not have an interest in the transaction constitutes a quorum for the purpose of taking action under subsection (1)(c).
>
> (4) Satisfying the requirements of subsection (1) does not preclude other claims relating to a transaction in which a director or officer is determined to have an interest. Those claims shall be evaluated under principles of law applicable to a transaction in which a director or officer does not have an interest.
>
> (5) The board, by affirmative vote of a majority of directors in office and irrespective of any personal interest of any of them, may establish reasonable compensation of directors for services to the corporation as directors or officers, but approval of the shareholders is required if the articles of incorporation, bylaws, or another provision of this act requires that approval. Transactions pertaining to the compensation of directors for services to the corporation as

-4-

directors or officers shall not be enjoined, set aside, or give rise to an award of damages or other sanctions in a proceeding by a shareholder or by or in the right of the corporation unless it is shown that the compensation was unreasonable at the time established.

In *Camden v Kaufman*, 240 Mich App 389, 398; 613 NW2d 335 (2000), this Court held that under MCL 450.1545a, the "interested person" must "demonstrate that the transaction was validated in one of the ways permitted by statute." "[O]nce proper approval of an interested transaction is obtained, the type of challenges available are limited to waste, fraud, illegality, or the like." *Id.* at 396.

We reject plaintiffs' argument that MCL 450.1545a is not applicable because the statute applies only to transactions between the corporation and its directors or officers. Clear and unambiguous statutory language must be applied as written. *Camden*, 240 Mich App at 394. "[N]othing may be read into a statute that is not within the intent of the Legislature apparent from the language of the statute itself." *Detroit Pub Sch v Conn*, 308 Mich App 234, 248; 863 NW2d 373 (2014). The statutory language, "A transaction in which a director or officer is determined to have an interest," does not contain any language restricting the types of transaction to which the statute applies. The statute makes no distinction regarding transactions between a director and the corporation, and transactions between the corporation and a third party.

Plaintiffs argue that the Board's negotiations over the terms of the merger were tainted from the time that the Talmer defendants began to bargain for their own financial benefit. Plaintiffs cite Torgow's and Provost's appointments as chairman and vice chairman, respectively, and other Board members' appointments as directors of the Chemical Board of Directors. However, the question is not whether these defendants benefited, but whether the merger was validated by Board approval or shareholder approval with disclosure of material facts. Plaintiffs also cite the Talmer defendants' opportunities to tender 25 percent of their outstanding stock options in exchange for cash. However, this opportunity was available to all shareholders, not just directors.

Plaintiffs argue that the Board and shareholders' approval of the merger did not validate the transaction under § 1545a(1) because Board members used the transaction to obtain unique financial benefits not shared by the shareholders. Plaintiffs cite several cases that recognize the potential for corporate officers and directors to negotiate deals that are advantageous to themselves but suboptimal for public shareholders. Under § 1545a, however, the pertinent inquiry is not whether a transaction was more favorable to directors than shareholders, but whether a majority of all disinterested Board members or a majority of shareholders approved the transaction with sufficient disclosure of the material facts.

The Talmer defendants argue that the conditions stated in § 1545a(1)(b) and (c) were satisfied because the material facts concerning KBW's potential conflicts and the directors' benefits were disclosed before the Board unanimously approved the merger, and 99% of the shareholders voted to approve the merger. The Talmer Board was composed of 12 directors, five of whom received positions on the Chemical Board. A majority of the disinterested directors approved the merger. A Proxy Statement disclosed that the merger agreement was accompanied by service agreements for Torgow, Provost, and Dennis Klaeser, and it also recited the terms of

employment for Provost, Torgow, and Klaeser. It further disclosed that all shareholders holding outstanding stock options would receive 25 percent of their value in cash. Consequently, the entire Board and 99 percent of the shareholders approved the merger after they received disclosure of these material facts. Plaintiffs emphasize that the interested directors negotiated their own employment terms before the terms of the merger agreement were finalized, but regardless of when these conditions were first discussed, the Board members and the shareholders had knowledge of these facts when they voted to approve the merger.

Plaintiffs contend that the Talmer defendants disregarded KBW's conflicts of interest. Plaintiffs argue that Ronald Klein's deposition testimony establishes a question of fact with respect to the Board's knowledge of the potential conflicts of interest for KBW because he "could not confirm" that he had knowledge of KBW's contacts with Chemical. We disagree. Klein testified that he knew about KBW's contacts with Chemical. He just could not recall specific details about what information KBW shared with Chemical. Additionally, the minutes for a November 3, 2015 meeting of Talmer's Strategic Initiatives Committee (SIC) state that KBW had previously advised Chemical in transactions in 2014 and 2015 involving other bank mergers. Plaintiffs cite these minutes in support of their argument that the full Board did not properly vet KBW's conflicts of interest. However, the Talmer defendants presented evidence that KBW gave a presentation to the Board regarding a merger with Chemical on March 31, 2015. The Talmer defendants also cite Klein's deposition testimony that the Board "asked KBW to go share some information with Chemical," knowing that KBW had a relationship with Chemical. The Talmer defendants were thus aware of and approved KBW's contacts with Chemical during the early phases of negotiation. Additionally, the minutes for the November 17, 2015 Board meeting state that Provost reported that the SIC had met with KBW's managing director, James Harasimowicz, on November 3, 2015, to conduct a conflict-of-interest analysis with KBW.

Plaintiffs observe that the July 2015 engagement letter entitled KBW to receive fees for any transaction over the next 18 months. The letter states that it "confirms the engagement" of KBW by Talmer, to offer financial advisory and investment banking services on an exclusive basis "in connection with the possible acquisition" of Talmer "by [Company E] *or another acquiror . . . .*" (Emphasis added.) Plaintiffs argue that this agreement gave KBW an incentive to encourage a merger with Chemical, because it would have received fees if Talmer entered into a merger agreement with Company E or with any other institution. The Talmer defendants dispute this interpretation, but even if plaintiffs' interpretation of the phrase "another acquiror" is correct, KBW would benefit from any transaction that Talmer entered into. It also would not have been necessary for Talmer and KBW to enter into a new agreement with the December 2015 engagement letter. Under these circumstances, the engagement letter does not support an inference that KBW was working both sides of a Talmer and Chemical transaction, or that the Board and shareholders approved the merger without disclosure of KBW's potential conflicts.

Plaintiffs argue that the approval of the merger was tainted because the Board and the shareholders relied on financial forecasts that KBW contrived to undervalue Talmer's stock. Plaintiffs state that although Talmer pursued a successful plan of growth by acquiring other banking institutions before 2015, the financial forecasts that KBW prepared for the merger assumed that Talmer would discontinue this strategy. Plaintiffs state that KBW never provided financial models that were prepared for the Federal Deposit Insurance Corporation (FDIC), and

that forecasted growth through future acquisitions. Plaintiffs cite Dennis Klaeser's deposition testimony in support of this allegation. Klaeser, Talmer's Chief Financial Officer, testified in his deposition that acquisitions were the core strategy for Talmer's growth. He stated that Talmer submitted plans to the FDIC in 2010 and 2014 that included financial projections based on continuation of the acquisition strategy. In early 2014, Klaeser submitted a five-year plan and a three-year update to the FDIC. The model in these plans projected growth of nearly $10 billion by 2017. Klaeser agreed that Talmer likely would have continued to pursue this plan if it had not merged with Chemical, but he also stated that there were fewer banking institutions available for acquisition because they were recovering from the downturn in the industry. He stated that the merger and acquisition market had "changed significantly." He explained that there were opportunities for acquisitions, but greater risk that these opportunities would not materialize. Klaeser explained that the FDIC required the financial forecasts in order to monitor institutions that might grow too rapidly and stress its capital base.

Plaintiffs argue that the omission of the FDIC forecasts was a material omission. "In order for a plaintiff to state properly a claim for breach of a disclosure duty by omission, he must plead facts identifying (1) material, (2) reasonably available (3) information that (4) was omitted from the proxy materials." *Orman v Cullman*, 794 A2d 5, 31 (Del Ch, 2002).[2] In order for an alleged omission to be material, there must be a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available" to the shareholder." *Id*. at 31-32. Plaintiffs characterize this omission as an intentional withholding of material information. They emphasize that Klaeser testified that Talmer would have continued to seek acquisition opportunities, but Klaeser testified that such opportunities were becoming less certain. KBW's assumption that there would not be future acquisitions was thus reasonable. Moreover, the salient fact is that the shareholders and Board members received projections and received information regarding what factors were and were not included in those projections. Financial forecasts are not definitive facts, but inherently uncertain predictions of future events. KBW disclosed that its forecasts were based on the assumption that Talmer would not continue its acquisition strategy.

For these reasons, the trial court did not err by ruling that the Talmer defendants were entitled to summary disposition pursuant to MCR 2.116(C)(10).

## IV. SUMMARY DISPOSITION FOR KBW

Plaintiffs also argue that the trial court erred by granting summary disposition in favor of KBW pursuant to MCR 2.116(C)(10) on their claims alleging that KBW aided and abetted the Talmer defendants' breach of fiduciary duty. We disagree.

---

[2] "In the absence of clear Michigan law on matters of corporate law, Michigan courts often refer to Delaware law." *Glancy v Taubman Ctrs, Inc*, 373 F3d 656, 674 n 16 (CA 6, 2004), citing *Russ v Fed Mogul Corp*, 112 Mich App 449, 457-458; 316 NW2d 454 (1982).

Michigan law recognizes a cause of action for aiding and abetting a breach of fiduciary duty. *Echelon Homes, LLC v Carter Lumber Co*, 261 Mich App 424, 445; 683 NW2d 171 (2004), rev'd in part on other grounds 472 Mich 192 (2005). "Where a person in a fiduciary relation to another violates his duty as fiduciary, a third person who participates in the violation of duty is liable to the beneficiary." *LA Young Spring & Wire Corp v Falls,* 307 Mich 69, 106; 11 NW2d 329 (1943). The essential elements required for aiding and abetting liability are: (1) that an independent wrong occurred; (2) that the aider or abettor had knowledge of the wrong's existence; and (3) that substantial assistance be given to effecting that wrong. See Restatement Torts, 2d, § 876(b).

As discussed earlier, the trial court properly granted summary disposition for the Talmer defendants with respect to plaintiffs' claim for breach of fiduciary duty. Accordingly, plaintiffs cannot satisfy the element of the existence of an independent wrong with respect to their aiding and abetting claim against KBW. Accordingly, the trial court did not err by granting KBW's motion for summary disposition pursuant to MCR 2.116(C)(10).

## V. PLAINTIFFS' REQUEST FOR ADDITIONAL DISCOVERY

Plaintiffs also argue that the trial court erred by granting summary disposition prematurely, before they had the opportunity to conduct full discovery. We disagree.

"A motion under MCR 2.116(C)(10) is generally premature if discovery has not been completed unless there is no fair likelihood that further discovery will yield support for the nonmoving party's position." *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 33-34; 772 NW2d 801 (2009). The principal factual issues surrounding plaintiffs' claims concerned financial benefits to various Board members from the merger with Chemical, KBW's alleged potential conflicts of interest, the Board members' knowledge and disclosure of these conflicts, the data KBW considered or failed to consider in its financial projections, and disclosures of these matters to shareholders. Plaintiffs obtained documentary evidence of the merger agreement, Torgow's and Provost's financial benefits, minutes of Board meetings and SIC meetings, and the materials that KBW presented to Talmer and Chemical. Plaintiffs also obtained the Proxy and Supplemental Proxy statements that were presented to shareholders. Under MCL 450.1545a, the pertinent question was whether the material facts of the transaction and the directors' interests were disclosed to Board members and shareholders. The documentary evidence addressed this question. Individuals' deposition testimony might add personal recollections and subjective impressions to the documentary evidence, but such evidence does not supplant the documents. Plaintiffs have not made a persuasive showing that further discovery was fairly likely to yield support for their position. Accordingly, we reject plaintiffs' argument that discovery was premature.

## VI. TIMELINESS OF MOTION FOR CLASS CERTIFICATION

Plaintiffs argue that the trial court erred by denying their motion to strike defendants' notice of plaintiffs' failure to timely move for class certification under MCR 3.501(B)(1) in the 2017 action. They assert that their motion was timely filed pursuant to the trial court's stipulated order extending the time for moving for class certification, which was entered before plaintiffs filed their first amended complaint ("FAC"). In light of our conclusion that the trial court

properly granted summary disposition, we need not address this issue. *Inge v Rock Fin Corp*, 388 F3d 930, 941 (CA 6, 2004).

## VI.  DISMISSAL OF LEE AND CLERS UNDER MCR 2.116(C)(6)

After the 2017 action was filed, plaintiffs Lee and CLERS moved to voluntarily dismiss the 2016 action without prejudice so that they, along with plaintiff Nicholl, could continue with the 2017 action.  The trial court did not grant Lee and CLERS's motion for voluntary dismissal, but instead dismissed Lee and CLERS from the 2017 action.

Summary disposition is permissible under MCR 2.116(C)(6) where "[a]nother action has been initiated between the same parties involving the same claim."  "A circuit court's ruling under MCR 2.116(C)(6) is reviewed de novo on the basis of the record as it existed at the time the ruling was made." *Planet Bingo, LLC v VKGS, LLC*, 319 Mich App 308, 326; 900 NW2d 680 (2017).  MCR 2.116(C)(6) authorizes the trial court to dismiss an action where "[a]nother action has been initiated between the same parties involving the same claim."  Plaintiffs argue that in *Fast Air, Inc v Knight*, 235 Mich App 541, 545; 599 NW2d 489 (1999), this Court held that the trial court is required to consider the procedural posture before granting summary disposition under subsection (C)(6).  Actually, in *Fast Air*, this Court held "that MCR 2.116(C)(6) does not operate where another suit between the same parties involving the same claims is no longer pending at the time the motion is decided."  Here, the 2016 and 2017 actions were pending simultaneously up until the time that the trial court granted the summary disposition motions.  There was no factor precluding the trial court from granting the (C)(6) motion with respect to Lee and CLERS.  In any event, the trial court's dismissal of plaintiffs' claims on the merits in both the 2016 and 2017 actions are dispositive of the claims against Lee and CLERS regardless of whether they were proper parties in the 2017 action.

Affirmed in both appeals.

/s/ Stephen L. Borrello
/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto