*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0148P (6th Cir.)
File Name: 02a0148p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

SCOTT BRANNAM and JANET
BRANNAM, on behalf of
themselves and all others
similarly situated,
     *Plaintiffs-Appellants,*

    *v.*

HUNTINGTON MORTGAGE
COMPANY, an Ohio
Corporation,
     *Defendant-Appellee.*

No. 00-2225

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 99-00804—David W. McKeague, District Judge.

Argued: March 7, 2002

Decided and Filed: April 29, 2002

Before: KENNEDY, BOGGS, and DAUGHTREY, Circuit
Judges.

---

**COUNSEL**

---

**ARGUED:**  Christopher G. Hastings, DREW, COOPER & ANDING, Grand Rapids, Michigan, for Appellants.  George G. Kemsley, BODMAN, LONGLEY & DAHLING, Detroit, Michigan, for Appellee.  **ON BRIEF:**  Christopher G. Hastings, John E. Anding, DREW, COOPER & ANDING, Grand Rapids, Michigan, for Appellants.   George G. Kemsley, BODMAN, LONGLEY & DAHLING, Detroit, Michigan, for Appellee.

---

**OPINION**

---

   KENNEDY, Circuit Judge.   Plaintiffs Scott and Janet Brannam brought this purported class action suit against defendant Huntington Mortgage Company, challenging a document preparation fee routinely charged by Huntington, but not disclosed as part of the finance charge.  Plaintiffs contend that Huntington's actions violate the Truth In Lending Act ("TILA"), as well as state law.  The district court granted summary judgment in favor of Huntington, and plaintiffs now appeal.  For the reasons set forth below, we affirm the judgment of the district court.

I.

   This case involves the assessment of a document preparation fee in connection with mortgage loans. Huntington routinely charges a document preparation fee of $250 for mortgage loans, although in rare cases that fee may be waived or reduced.  Plaintiffs allege that charging this fee without disclosing it as a finance charge violates TILA, 15 U.S.C. § 1605(e). Regulation Z, promulgated under TILA, permits lenders to exclude from finance charge disclosures any fees for the preparation of certain "loan-related

if the services for which the fees are imposed are performed by employees of the creditor rather than by a third party. . . . Charges must be reasonable in amount so as not to allow inflated costs to indirectly augment the creditor's yield. Reasonableness should be determined by comparing the charges imposed by a particular creditor with the prevailing practices of the industry in the locality.

119 B.R. 479, 488 (E.D. Pa. Bankr. 1990), *vacated on other grounds by* 127 B.R. 759 (E.D. Pa. 1991) (qouting R. Rohner, The Law of Truth in Lending, §3.03[2][a], at 3-30 to 3-31 (1984)).

Because defendant has produced evidence suggesting that $250 is a reasonable fee for document preparation in Western Michigan, and plaintiffs have not produced any evidence to the contrary, we agree with the district court that there is no genuine issue of material fact as to whether the fee was "reasonable" as required by Regulation Z. That document preparation services are offered on the Internet for substantially less does not create an issue of fact as to reasonableness. The relevant inquiry is not whether Huntington has used the cheapest third-party service available to it anywhere, but whether the fee is reasonable given the prevailing practices in the relevant market. If plaintiffs had produced any evidence that Huntington's rate was unreasonable in that context, or that the market rates were tainted by collusion, then summary judgment would not be appropriate. But plaintiffs offered the district court no such evidence.

### III.

For the foregoing reasons, we affirm the judgment of the district court.

documents," so long as such fees are "bona fide and reasonable in amount." 12 C.F.R. § 226.4(c)(7). Before the district court, plaintiffs raised two distinct arguments. First, they contended that the TILA exclusion should apply only to documents related to the transfer of title, not to all documents connected with a mortgage loan. This argument was based primarily upon an interpretation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq., and an accompanying regulation, 24 C.F.R. § 3500 et seq., known as Regulation X. Second, they agreed that Huntington's document preparation fee was not "bona fide and reasonable" because it covers loan origination costs and because document preparation services are available on the Internet for substantially less than $250.

On March 6, 2000, the district court heard oral argument on Huntington's motion for partial summary judgment. The court issued an opinion from the bench. It rejected plaintiffs' argument based on Regulation X, finding no support for plaintiffs' attempt to read the terms of that regulation into Regulation Z or the TILA. The court found "no basis whatsoever for the plaintiffs' argument . . . that because the fee in this case was charged for things other than title transferring documents, that these fees here do not fall within the exemption or exclusion for the definition of the finance charge fees under [the TILA]." The court concluded that the uniform fees charged by Huntington were bona fide, but reserved judgment on the question whether they were reasonable, observing that a factual dispute remained as to that question. The court, however, specifically rejected plaintiffs' contention that reasonableness should be determined by comparing the fee charged by Huntington to a fee for document preparation charged by a third-party service available on the Internet. The court declared that the proper measure of reasonableness requires a comparison to fees charged by other lenders in the relevant marketplace. On March 21, 2000, the court entered a written order granting in part and denying in part Huntington's motion for partial summary judgment, holding that "a uniform document

services fee is bona fide and properly excludable from the computation of the finance charge in this case, provided such fee is reasonable."

Plaintiffs later moved for relief from this order, arguing that newly discovered evidence would change the court's analysis of the Regulation X issue. The defendant moved for summary judgment on the remaining issue of reasonableness. After hearing arguments the court denied plaintiffs' motion, reiterating that even if Huntington had violated Regulation X, plaintiffs would not have a private right of action thereunder. The court refused to permit plaintiffs to bootstrap the Regulation X definitions into a TILA violation. The court also granted summary judgment to defendant on the question of whether the fee charged by Huntington was reasonable, based on evidence of the market rate for document preparation fees submitted by Huntington. Having resolved all issues necessary for the disposition of the TILA claim, the court granted summary judgment in favor of defendant on that claim and declined to exercise supplemental jurisdiction over the plaintiffs' remaining state law claims. Plaintiffs appeal.

## II.

We review a district court order granting summary judgment under a *de novo* standard of review, without deference to the decision of the lower court. *Taylor v. Michigan Dept. of Corrections*, 69 F.3d 76 (6th Cir. 1995); *Lake v. Metropolitan Life Ins. Co.*, 73 F.3d 1372, 1376 (6th Cir. 1995). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c).

TILA was enacted "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him . . . ."

after the acquisition Huntington employees in Columbus reviewed the fees that were being charged (although he could not say that the document preparation fee itself was specifically considered because he did not have such knowledge). Further, his testimony above suggests that discussions about the appropriate document preparation fee were held, but that he simply could not remember any specific reports. Plaintiffs do not have any evidence that connects Huntington to the document preparation fee practices engaged in by FMB. Because plaintiffs' mortgage loan was extended by Huntington, after the acquisition, they have no evidence that the fee covered any loan origination costs. Hence, there is no evidence that the fee was not "bona fide" under Regulation Z.

Finally, plaintiffs contend that the fee charged by Huntington is not "reasonable in amount" as required by Regulation Z. They contend that no meaningful marketplace comparison can be conducted where the fees charged by other lenders are for different costs or services, sometimes even for items that are not excludable under Regulation Z. Essentially, plaintiffs assert that mortgage lenders may only charge as a document preparation fee the amount of the lender's actual costs for preparing loan related documents. Here, Huntington had its own employees prepare the relevant documents, rather than using a third-party service. Hence, it is difficult to determine the actual document preparation costs of each individual loan.

The scant caselaw on this subject tends to support Huntington's contention that the fee should be considered reasonable if it was for a service actually performed and reasonable in comparison to the prevailing practices of the industry in the relevant market. In *In re Grigsby*, the court stated:

To be excluded from the finance charge, the fees must not only be the right types, but they must also be "bona fide and reasonable in amount." They are bona fide even

this testimony to argue that Huntington never conducted any market analyses of document preparation fees, but simply extended the fee charged by FMB, which was based on Snyder's improper calculation. But that is misleading. Burmeister testified as follows:

Q: Have you ever seen a report on which somebody else collected the information specifically with regard to the document preparation fee charged by other mortgage lenders in the West Michigan area?

A: I would have seen – I would have had a discussion, a review of what other competitors would have charged within the marketplace that we were in fact competing in.

Q: You used the phrase would have. You don't have any specific recollection of ever looking at such a report, do you?

A: Not a report per se.

Q: You don't have any specific recollection of an individual being charged with going out and gathering the information about what other banks charge with regard to fees for the preparation of documents?

A: No. I mean, there would have been discussion, but not – I'm not sure I understand your question. Why don't you repeat the question for me.

Q: You're not aware of any specific report that anyone has made that compiles information with regard to the document preparation fees charged by other lenders in the West Michigan area?

A: No.

That Burmeister could not remember any specific report when pressed for one is not evidence that Huntington never conducted any such analysis. Indeed, Burmeister testified that

15 U.S.C. §1601(a). Under TILA, a lender must disclose the "finance charge" as defined by the statute. The statute exempts from the computation of the finance charge "[f]ees for preparation of loan-related documents." 15 U.S.C. § 1605(e)(2). Regulation Z elaborates on this exemption, providing that "[f]ees for preparing loan-related documents, such as deeds, mortgages, and reconveyance or settlement documents" are excludable "if the fees are bona fide and reasonable in amount." 12 C.F.R. § 226.4(c)(7). Plaintiffs advance essentially the same arguments on appeal as they pursued before the district court, although they characterize them somewhat differently.

First, plaintiffs argue that the fee charged by Huntington is not bona fide because it is not "exactly what it purports to be." Plaintiffs go to great lengths to establish that the court must adopt this dictionary definition of "bona fide," in accordance with TILA's definition provisions. This means, they suggest, that Huntington can charge only its costs of preparing title-related documents, such as notes, mortgages, and deeds. This is so, the argument goes, because Huntington itself claimed that these were what the fee was for by entering the amount of $250 on Line 1105 of the Good Faith Estimate form required by Regulation X. As the district court noted, this is a strained effort by plaintiffs to bootstrap an arguable violation of Regulation X, for which there is no private right of action, into a TILA violation. Regulation X is simply not germane to plaintiffs' TILA claim. *See Inge v. Rock Financial Corp.*, 281 F.3d 613, 626 & n.4 (6th Cir. Feb. 26, 2002). Moreover, the plaintiffs seemingly ignore the plain language of Regulation Z, which permits the exclusion of fees for the preparation of not only mortgages and deeds, but also "settlement documents" – a broad term that would seem to encompass any other documents necessary for the closing of a mortgage loan. The appendix to Regulation X, which provides instructions for filling out the Good Faith Estimate form, states that Line 1105 is for the entry of "charges for preparation of deeds, mortgages, notes, etc." The inclusion of the term "etc." in the Regulation X, Line 1105 definition

arguably leaves room for fees for the preparation of settlement documents other than title-transferring documents. But even assuming arguendo that the Line 1105 definition is limited to only title-transferring documents, it does not establish a violation of Regulation Z, which contains a different definition. Like the district court, we reject plaintiffs' strained construction of the applicable regulations.

Next, plaintiffs argue that the document preparation fee is not bona fide because Huntington's own regional manager, John Burmeister, admitted that the fee was for loan origination costs. In considering this argument, it is crucial to separate Huntington Mortgage Company from its predecessor, First Michigan Bank ("FMB"). FMB was actually a holding company for 14 separate state banks, which apparently maintained some level of autonomy in setting applicable fee structures. Huntington acquired FMB and all of its separate state banks in 1997. Burmeister worked for FMB and stayed with Huntington after the acquisition. The testimony offered by plaintiffs in this case was actually taken in a deposition in connection with a separate case, *Krause v. Huntington National Bank f/k/a FMB-First Michigan Bank Grand Rapids*.

Plaintiffs contend that Burmeister admitted that Huntington's document preparation fee was not set according to the actual costs of document preparation, or even according to a market analysis of the fees charged by other lenders. Rather, they contend, Burmeister admitted that the fee was set by FMB by considering, among other things, mortgage loan origination costs (which are not excludable under Regulation Z), and that they have not since changed. Huntington argues, and the district court agreed, that plaintiffs are misrepresenting Burmeister's testimony, that Burmeister was describing how fees were set at FMB, and that he also testified that Huntington had performed some market analyses in order to set the fees appropriately, rather than by considering loan origination costs.

Having fully reviewed Burmeister's testimony and considering the tesimony cited by plaintiffs in its proper context, this court agrees with Huntington and the district court. Burmeister testified that each of the FMB affiliates had different procedures relative to document preparation fees. He testified that at FMB-Zeeland (the affiliate bank in Zeeland, Michigan) the document preparation fee was $225 prior to Huntington's acquisition of FMB. He further testified that after the acquisition Huntington charged a $225 document preparation fee, which was later raised to $250. He testified that he did not recall the reason for the increase. He testified that the ultimate decision as to the fee would have been made at the home office in Columbus, Ohio, but would have been dependent upon typical and customary practices in the market in which the branch is located. He testified that after the acquisition, Huntington continued to charge a $225 document preparation fee, that a Huntington employee named Carol Cabot had reviewed what could be programmed into the software that Huntington was switching to, and that he did not know whether the $225 amount was specifically considered and agreed upon, because he was not privy to "what went on in Columbus." He also testified that he was aware of a presentation made by FMB Compliance Officer Tom Snyder before the acquisition. In the presentation, Mr. Snyder indicated that the document preparation fee had been reviewed, and it was appropriate. Burmeister did not recall anything else about the presentation, but plaintiffs have produced a memorandum and other writings that were circulated within FMB that suggest that Snyder was improperly considering loan origination costs in determining whether the document preparation fee was appropriate.[1] Beyond the Snyder report, Burmeister testified that he did not personally create, nor was he aware of, any *specific reports* regarding document preparation fees. Plaintiffs latch onto

---

[1] Mr. Snyder's specific conclusion was that a systemwide maximum document preparation fee of $400 was appropriate and excludable under Regulation Z.