881 A.2d 760 (2005)
380 N.J. Super. 176
Fredric J. GROSS, on behalf of himself and all others similarly situated, Plaintiff-Appellant,
v.
TJH AUTOMOTIVE CO., L.L.C. d/b/a Cherry Hill Classic Cars, TJH Chevrolet Co., L.L.C. d/b/a Classic Chevrolet, and Classic Cars Nissan, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued April 26, 2005.
Decided September 9, 2005.
*761 Madeline L. Houston, Bloomfield, argued the cause for appellant (Houston & Totaro, attorneys; Ms. Houston and Melissa J. Totaro, on the brief).
Garen Meguerian, Wayne, PA, argued the cause for respondents (Saltz Polisher, attorneys; Mr. Meguerian, on the brief).
Marvin Brauth, Woodbridge, argued the cause for amicus curiae New Jersey Coalition of Automotive Retailers (Wilentz, Goldman & Spitzer, attorneys; Mr. Brauth, of counsel; Mr. Brauth and Robert L. Selvers, on the brief).
Before Judges STERN, WECKER and GRAVES.
The opinion of the court was delivered by
*762 STERN, P.J.A.D.
Plaintiff Fredric J. Gross appeals from orders of the Law Division entered on July 25, 2003, dismissing counts five and six of plaintiff's complaint alleging violations of the Consumer Fraud Act (CFA)[1] and the regulations promulgated thereunder, and its order of May 7, 2004, dismissing counts seven (alleging common law fraud) and eight (alleging unconscionability).[2] We are told that the remaining counts were settled resulting in a final judgment.
On August 31, 2001, plaintiff purchased a 2002 Jaguar X Type 2.5 automobile from defendant Cherry Hill Classic Cars for $35,220.00, and was charged a "registration/title fee" of $113.50 and a "documentary fee" of $135.00. He challenges the two components of the latter, a "clerical expense" fee and an "MV messenger service" fee of $67.50 each, claiming they violate consumer protection regulations (counts five and six), and asserts that the "messenger service" fee constitutes common law fraud (count seven) and is unconscionable (count eight). He specifically contends that "the trial court erred when it dismissed counts five and six for failure to state a claim" because the "clerical expense" disclosure on the vehicle order form was not sufficiently detailed and "the practice of charging for services not actually rendered violates" administrative regulations. He also challenged the dismissal of counts seven and eight because the motor vehicle "messenger service" charge is "unconscionable" in violation of N.J.S.A. 56:8-2. Plaintiff further contends that "defendants' expert report was inadmissible and should have been excluded," plaintiff proved an "ascertainable loss and damages" and "the court erred when it denied plaintiff's motion to extend the discovery period to allow for class wide discovery period."

I.
In February 2003 plaintiff filed an eight-count complaint "as a class action pursuant to R. 4:32-1(b)(3)," on behalf of all persons who purchased or leased vehicles from defendants over a six-year period and who were charged a "documentary fee" or similar fee. Plaintiff alleged fraudulent misrepresentation with respect to a "registration/title fee" charged by defendants'-related corporations (count one); violation of the CFA with respect to the "registration/title fee" (counts two and four); conversion with respect to the "registration/title fee" (count three); violation of the CFA with respect to the "documentary service" fee charged by defendants because of their failure to itemize the service being performed (count five); violation of the CFA because the "clerical expense" for which a corresponding fee was charged was not actually performed (count six); fraudulent misrepresentation with respect to the "messenger service fee" (count seven); and violation of the CFA based on the excessive nature of the "messenger service fee" (count eight).
Defendants "share common ownership with Cherry Hill Classic Cars." Their names all appear on the top of the sales agreement plaintiff executed when he purchased the Jaguar from defendant Cherry Hill Classic Cars. The purchase price was $35,220. The price had been agreed upon the prior day, at which time plaintiff was permitted to test drive the vehicle and drove the car to his home. Plaintiff was presented with a sales agreement on which *763 was listed a "Registration/Title Fee" of $113.50 and a "Documentary Fee" of $135.00, comprised of $67.50 representing a "M.V. Messenger Service" and $67.50 representing a "Clerical Expense." Plaintiff believed that the "documentary fee" was merely "a way of boost[ing] the sales price" and complained about the fee, telling the salesman that he "felt very strongly about it." In response, plaintiff was given a copy of a document entitled "DEALER DOC FEE," which included thirteen items covered, including preparation of paperwork for registration and transfer of title, document recording, notarization and postage and handling. The bottom of the document indicated that "for deals that do not require the entire amount of the fee to cover the . . . listed items, the balance will be credited as additional dealer income." Plaintiff also objected to the "clerical fee" on the basis that his purchase did not involve a trade-in and required no document preparation related to financing or warranties.
Plaintiff also objected to the "messenger fee" as an "after-the-fact" fee and offered to take the relevant documents to the Division of Motor Vehicles (DMV) himself. Michelle Condo, defendants' comptroller, conceded that while on occasion, defendants have permitted other customers to title and register their vehicles, she asserted that plaintiff's request was denied because he was not considered to be "sincere." He "would have had to agree" to do various things to complete the transaction and have the vehicle registered at DMV before he could have taken possession of the car.
Plaintiff signed the purchase agreement. Next to the disputed fees, however, plaintiff wrote the word "outrageous." He also wrote a separate check for the $135.00 "documentary fee" and suggested that the sales manager not cash the check, the implication being that plaintiff would take legal action if the check was cashed. At the time, plaintiff only objected to the amount of the "clerical expense" portion, but subsequently objected to the amount of the "messenger fee" portion as well.
According to Condo, Cherry Hill's runner took the relevant documents associated with plaintiff's purchase to the DMV on September 4, 2001. Documents relating to license, title and registration for five other customers were delivered from Cherry Hill to the DMV at the same time. All completed documents for the three dealerships are consolidated at Condo's office, where the documents are processed to ensure they are accurate and that they meet any special customer-related needs. Each defendant employs a driver, or "runner," who is responsible for providing the messenger service. Defendants also use a courier service to transfer title to trade-ins at local DMV offices and in Trenton. The courier also picks up blank registration forms from the DMV and brings them back to the dealerships.
With each vehicle purchased, defendants prepare a "sold and trade pack" which contains at least one odometer statement in compliance with federal law, a power of attorney form permitting "the dealership to efficiently process [the] paperwork on behalf of [the] customers," and an agreement that the customer will "provide insurance on the vehicle while the vehicle is being driven with a temporary tag." In addition, defendants provided a detailed list of "labor" and "costs/expenses" which comprised the "messenger fee." These included pick-up or delivery of the necessary paperwork, obtaining or transferring license plates and tags, transferring completed motor vehicle work, and the cost of maintaining and utilizing the vehicles and office equipment used in providing the service. Keith Camiolo, manager of Cherry *764 Hill Classic Cars, determined that $67.50 "was a competitive and appropriate rate for the [messenger] service provided."
Defendants offered an expert report prepared jointly by Elliot J. DeSanto, a certified public accountant, and Louis Young, a specialist in "automotive dealership financial information and . . . operating procedures for automotive retailers." The report examined the messenger fees charged by other dealers in defendants' geographic area as well as the actual cost of the fee. Young and DeSanto determined that the "average [messenger service] fee" in the Cherry Hill area was $56.32, ranging from $30.00 to $120.00. Based on their own analysis, Young and DeSanto determined the actual cost of the messenger service fee to be in a "range between" $30.40 and $45.24 for each vehicle sold. The report further analyzed the time defendants' comptroller and general managers spend on a daily basis in overseeing, supervising and coordinating the messenger service for the three dealerships. It conducted the same analysis with respect to the comptroller's administrative staff and runners. The report also considered various costs associated with the vehicles used in providing the service, including "depreciation," "maintenance, parts and labor," fuel, tolls and insurance and registration.

A.
Plaintiff contends that counts five and six, regarding the "clerical expense" fee, should not have been dismissed because the "clerical expense" fee set forth on the sales agreement did not comply with N.J.A.C. 13:45A-26B.2(a)(2)(i), and thus constituted a violation of the CFA. Specifically, plaintiff maintains that the clerical expense fee charged by defendants did not contain the itemization envisioned by the regulation and that, as evidenced by the "dealer doc fee" document presented to him, the charge includes services not actually performed.
In dismissing counts five and six, Judge Kassel found that the $135.00 "documentary fee" complied with the regulation, and stated:
The arguments concerning whether or not that was deceptive if, in fact, the actual cost was less to the dealership. . . that argument, in my judgment, goes to counts seven and eight.
But, anyway, in count five, I'm satisfied that the sales document itself complied with [the regulation], again, on its face. . . .
Count six also alleges that there was a violation of administrative code 13:45A-26(b) in regard to the $67.50 for clerical expenses. And it seems to me the gist of the argument is that it is insufficient just to say clerical expenses.
Again, if there are no clerical expenses but the customer was . . . charged, that may very . . . well be relevant to count[s] seven and eight. But in my judgment, putting forth in the sales document $67.50 for clerical expenses is sufficient as a matter of law. Therefore, I'm dismissing count six.
In reviewing a complaint dismissed under R. 4:6-2(e), the inquiry is limited to examining, with liberality, whether the complaint has sufficiently set forth a legal cause of action. Printing Mart-Morristown v. Sharp Elec. Corp., 116 N.J. 739, 746, 563 A.2d 31 (1989). The court is not concerned with the plaintiff's ability to prove the allegations contained in the complaint, and the plaintiff is entitled to every reasonable inference of fact. Ibid.
Pursuant to the CFA, N.J.S.A. 56:8-4 and N.J.S.A. 56:8-48, the Director of the Division of Consumer Affairs promulgated *765 regulations defining a "documentary service fee" as
any monies or other thing of value which an automotive dealer accepts from a consumer in exchange for the performance of certain documentary services which include, but are not limited to, the preparation and processing of documents in connection with the transfer of license plates, registration, or title, and the preparation and processing of other documents relating to the sale of a motor vehicle to said consumer[.]
[N.J.A.C. 13:45A-26B.1.]
The regulations make it an "unlawful practice" under the CFA "automotive dealer"[3] to
[a]ccept[], charg[e], or obtain[] from a consumer monies, or any other thing of value, in exchange for the performance of any documentary service without first itemizing the actual documentary service which is being performed and setting forth in writing on the sale document the price for each specific documentary service[.]
[N.J.A.C. 13:45A-26B.2(a)(2)(i).]
Proof of a violation of a regulation promulgated under the CFA is enough to establish an "unlawful practice" and wrongful conduct under the Act, "regardless of intent or moral culpability." Cox v. Sears Roebuck & Co., 138 N.J. 2, 18-19, 647 A.2d 454 (1994). "In those instances, intent is not an element of the unlawful practice, and the regulations impose strict liability for such violations." Id. at 18, 647 A.2d 454.
In Delaney v. Garden State Auto Park, 318 N.J.Super. 15, 722 A.2d 967 (App.Div.), certif. denied, 160 N.J. 477, 734 A.2d 792 (1999), the buyer alleged that the dealer violated the CFA by failing to disclose the price of "pre-delivery" services and by failing to itemize such services in the final sales agreement. Id. at 16, 722 A.2d 967. Prior to purchasing the used vehicle there involved, the buyer declined to purchase a service contract and extended warranty for $1,100.00. Id. at 17, 20, 722 A.2d 967. However, the sales contract was for $7,983.00, which the buyer subsequently learned included $2,200.00 for the cost of "rust proofing, undercoating, paint sealer and fabric guard," the very expenses embodied in the service contract and warranty he declined to accept. Id. at 18, 722 A.2d 967. The sales agreement did not include or enumerate any pricing or listing of these "pre-delivery services," as required by N.J.A.C. 13:45A-26B.2, and the dealership admitted that it cost them only $85 to perform these services. Id. at 18-19, 722 A.2d 967. As a result, we had "no hesitancy in concluding that the circumstances presented . . . were designed to be eliminated by the consumer fraud legislation," id. at 20, 722 A.2d 967, and that the dealership had "engaged in an unconscionable business practice in violation of the Act." Id. at 21, 722 A.2d 967.
Here, however, there was itemization and enumeration of the documentary services, and the question is whether that itemization and enumeration was sufficient under the applicable regulations promulgated under the Act, which must be "liberally construed as remedial legislation in favor of protecting consumers." Delaney, supra, 318 N.J.Super. at 19-20, 722 A.2d 967 (citing Fenwick v. Kay Am. Jeep, Inc., 72 N.J. 372, 376-77, 371 A.2d 13 (1977)).
*766 The regulations were adopted in response to practices that caused consumers to spend additional monies for services that were either unnecessary or not being performed. As noted by one commentator:
The main thrust of the regulations is to protect consumers against fraudulent practices related to pre-delivery services, such as vehicle and document preparation services. The intent of the regulations is to prevent dealerships from performing unauthorized, unnecessary and expensive pre-delivery work on a motor vehicle that is under a contract of sale. Such services may only be performed with the consent of the consumer and only by first presenting an itemized invoice of the precise pre-delivery services to be delivered and the exact cost for each service. Failure to follow this procedure constitutes both an unconscionable business practice and a violation of the regulations.
[25 New Jersey Practice, Motor Vehicle Law and Practice § 17.9, at 112 (Robert Ramsey) (2001).]
We conclude that the "clerical expense fee" included sufficient itemization of the actual "documentary service" being performed to satisfy N.J.A.C. 13:45A-26B.2(a)(2)(i), a position which is consistent with precedent under the analogous federal Truth in Lending Act, 15 U.S.C.A. § 1601 to -1693r, and its implementing Regulation Z regarding disclosure requirements. 12 C.F.R. § 226.1 et seq.
In Downey v. Whaley-Lamb Ford Sales, Inc., 607 F.2d 1093, 1094-95 (5th Cir.1979), it was held that a single $2.00 charge for "license, title and registration fees" was sufficient because each fee did not have to be individually itemized and disclosed, despite the provision of Regulation Z requiring that charges not part of the finance charge be "individually itemized." Rejecting the purchaser's claim that the fee was not sufficiently or "individually itemized" because it was not broken down into its individual components, the Fifth Circuit, while recognizing its "responsibility to construe the act and regulations favorably to the consumer," id. at 1095, held that separate itemization of the fees would not advance the purpose of the law because it "would not contribute to the informed use of credit or enable the consumer `to compare more readily the various credit terms available to him.'" Ibid. See also Wallace v. Brownell Pontiac-GMC Co., 703 F.2d 525, 528 (11th Cir.1983) (a $37.50 "clerical fee," "without separate itemization of the components of the charge" did not violate Regulation Z); In re Brown, 106 B.R. 852, 858 (Bkrtcy.E.D.Pa.1989) ("[a]s long as the entire sum of the fees charged was set forth, the disclosure . . . is sufficiently itemized"). The principle applies to the similar protections afforded under the CFA. Accordingly, count five was properly dismissed.
In count six, plaintiff claims that the inclusion of services not actually rendered as part of the "clerical expense" violated the CFA and is unconscionable. However, the regulation does not require a different fee in every case so long as the fee is itemized based on the services regularly and routinely performed, is reasonable, and is not excessive. Accordingly, we agree with the motion judge that the "clerical expense fee" did not violate N.J.A.C. 13:45A-26B.2(a)(2)(i) and the CFA.

B.
Plaintiff also argues that the "messenger fee" violated the CFA because the cost was approximately seventeen times the actual cost of the service provided. Plaintiff further asserts that the "messenger fee" constitutes common law fraud because *767 it is deceptive, given that defendants do not usually use a messenger service but rather its own employee, and because the fee covers costs other than the actual messenger activity performed.
In granting summary judgment, Judge Donaldson stated:
I don't think that the charge of . . . $67.50 or whatever they decide to charge for the messenger service is . . . a violation of the Consumer Fraud Act. I don't believe it is.
. . . .
I don't think it is a contract of adhesion. I think that it is a very open marketplace. I think that . . . just as you bargain for the price of a car, I think that you can bargain for the price of this. There's nothing that says you need to buy a car at that particular place. The fact that you have negotiated for it doesn't stop you from going somewhere else where you can negotiate a lower price . . . for the messenger service or no charge whatsoever. . . .
. . . .
I don't think that . . . there's a regulatory violation. I think they complied with the regulation. I don't think there was a material admission [sic]. I don't think there was any unconscionability about this, the fact that they make money on this. . . . [T]hey can charge . . . what they feel is appropriate for having provided this service and for the convenience of their consumer[s] . . . Somebody may think it's worth $67.50 to have somebody else take care of these items, which is getting their license plate tags and . . . registration. Somebody might think it would be worth more than that. Somebody thinks it's worth less than that . . . It's an open marketplace, and this is a marketplace where people can buy and purchase what they feel they can afford, and if they feel they can't they can go to the next dealer with it. And if they feel they can get a better deal [with] the next dealer they will do that.
I think that there is no cause of action under the Consumer Fraud Statute or under common law fraud. I certainly don't think that in this case there is even a[n] ascertainable loss in this matter, therefore the motion is granted.
We can find no genuine issue of material fact to preclude summary judgment as a matter of law. See Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 540, 666 A.2d 146 (1995); Prudential Property & Cas. Ins. Co. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App.Div.1998) (we use same standard as trial court).
The CFA prohibits
[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby. . . .
[N.J.S.A. 56:8-2.]
As already noted, the CFA is remedial legislation which should be liberally construed in favor of protecting consumers, Delaney, supra, 318 N.J.Super. at 19-20, 722 A.2d 967. It is designed to promote "real bargaining between parties" and to assure that purchasers realize their "freedom of choice and [have an] understanding [of their] ability to negotiate in a meaningful fashion." Kugler v. Romain, 58 N.J. 522, 544, 279 A.2d 640 (1971). The concept *768 of "unconscionability" promotes "good faith, honesty in fact and observance of fair dealing," particularly so that "the uneducated, the inexperienced and the people of low incomes" are not exploited. Ibid.
Giving plaintiff the benefit of all legitimate inferences that flow from the record, we accept for present purposes, plaintiff's conclusion that the actual cost per vehicle is $3.82, as compared to the $67.50 actually charged for the messenger fee. Based on that determination, plaintiff asserts that the fee is approximately seventeen times its cost.
But, as Judge Donaldson noted, plaintiff has not considered the relevant market forces or market price. While it is true that in Delaney, we focused on the disparity between the dealer's charge ($2,200.00) and its cost ($85.00), the cost was actually the "flat fee" the dealership paid to a third-party for the service. Delaney, supra, 318 N.J.Super. at 18, 722 A.2d 967. Thus, the market price for the service was not even considered. More importantly, the buyer in Delaney declined to purchase the very services in question, and the services were not disclosed in the sales agreement. Neither factor is present in this case.
In addition, the difference between the amounts in question, $2,200.00 in Delaney and approximately $63.50 in this case, is significant because, as noted above, the intent of the CFA regulations is to prevent "unauthorized, unnecessary and expensive pre-delivery work" and services. 25 New Jersey Practice, supra, § 17.9 at 112. See also Kugler, supra, 58 N.J. at 527-28, 279 A.2d 640 (violation of CFA based on door-to-door sale of educational books in areas where consumers were of limited education and economic means at more than twice their market price). See also, e.g., Brannam v. Huntington Mortgage Co., 287 F.3d 601, 606 (6th Cir.), cert. denied, 537 U.S. 1048, 123 S.Ct. 635, 154 L.Ed.2d 522 (2002) (concluding that $250.00 mortgage document preparation fee, although not "the amount of the lender's actual costs for preparing loan related documents" did not violate Regulation Z because "it was for a service actually performed and reasonable in comparison to the prevailing practices of the industry in the relevant market").
Based on the defendants' expert reports[4] and the absence of any expert proofs to the contrary, see Brannam, supra, 287 F.3d at 606, it appears that the messenger fee is both in line with the market price in the region and reasonable in amount. Moreover, as an attorney who represented the plaintiff in a major case decided under the CFA, see Cox, supra, 138 N.J. at 6, 647 A.2d 454, plaintiff knew he had the right to bargain and walk away if Cherry Hill declined to reduce or waive the messenger fee.
*769 Plaintiff further maintains that the messenger fee is an adhesive term. "[T]he essential nature of a contract of adhesion is that it is presented on a take-it-or-leave-it basis, commonly in a standardized printed form, without opportunity for the `adhering' party to negotiate except perhaps on a few particulars." Rudbart v. North Jersey Dist. Water Supply Comm'n, 127 N.J. 344, 353, 605 A.2d 681, cert. denied, First Fidelity Bank, N.A. v. Rudbart, 506 U.S. 871, 113 S.Ct. 203, 121 L.Ed.2d 145 (1992). In determining whether such terms should be enforced, courts have looked to the nature of the "standardized form of the document" used and to the "subject matter of the contract, the parties' relative bargaining positions, the degree of economic compulsion motivating the `adhering' party, and the public interests affected by the contract." Id. at 356, 605 A.2d 681. Particular focus is on whether there is gross or substantial inequality in bargaining power, or whether the parties are in positions of relative equality. See, e.g., Vasquez v. Glassboro Serv. Ass'n, 83 N.J. 86, 101-03, 415 A.2d 1156 (1980); Ellsworth Dobbs, Inc. v. Johnson, 50 N.J. 528, 555-56, 236 A.2d 843 (1967); Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 391, 161 A.2d 69 (1960).
There was no undue disparity in bargaining power in this case, which involved the purchase of a Jaguar automobile. As noted above, plaintiff knew he was free to refuse to purchase the vehicle if Cherry Hill refused to reduce or waive the fee.[5]
Finally, plaintiff alleges that the messenger fee constitutes common law fraud because the fee is deceptive in that defendants use their own employees rather than an actual messenger service, and that a consumer would not know that the fee covered remotely related clerical costs. The elements of common law fraud are a material misrepresentation of a presently existing or past fact; knowledge or belief by the defendant of its falsity; an intention that the other person rely on it; reasonable reliance thereon by the other person; and resulting damages. Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610, 691 A.2d 350 (1997) (citing Jewish Ctr. of Sussex County v. Whale, 86 N.J. 619, 624, 432 A.2d 521 (1981)). The record indicates that defendants do, in fact, use a courier service, primarily to transfer title to trade-ins at local DMV (now MVC) offices and in Trenton. In any event, we cannot conclude that the description of the fee can be found to constitute a "material misrepresentation" given that the messenger service can be said to be a "service" whether performed by the dealer or by an outside courier.

II.
In order for a private party to bring an action under the CFA, the party must have suffered "any ascertainable loss of moneys or property." N.J.S.A. 56:8-19; see also Furst v. Einstein Moomjy, 182 N.J. 1, 12, 860 A.2d 435 (2004); Weinberg v. Sprint Corp., 173 N.J. 233, 249-51, 801 A.2d 281 (2002). However, as there has been no showing of a violation of the CFA, we need not develop whether plaintiff made a showing that he suffered an ascertainable loss.

III.
Finally, plaintiff argues that in the event of a reversal, the order denying the extension *770 of the class action discovery period should also be reversed. As we affirm the judgment, we need not consider the request, and find no other contention or argument not addressed warrants discussion. R. 2:11-3(e)(1)(E).
Affirmed.
NOTES
[1] N.J.S.A. 56:8-1 to -135.
[2] Plaintiff also appears to appeal a separate order of May 7, 2003, denying his motion to extend the discovery deadline to permit the filing of a motion for class certification.
[3] There is no dispute that defendants are "automotive dealers." See N.J.A.C. 13:45A-26B.1.
[4] Plaintiff contends that defendants' expert report was inadmissible because the report was irrelevant, because it was not shown that the authors of the report had expertise in the field of messenger services and because the fee included inappropriate and duplicate "clerical expenses." We disagree.

Generally, a trial court should consider all of the information it knows to be available when evaluating a motion for summary judgment, including an expert's report, Ziegelheim v. Apollo, 128 N.J. 250, 264, 607 A.2d 1298 (1992), viewing the report in the light most favorable to plaintiff. Scully v. Fitzgerald, 179 N.J. 114, 130, 843 A.2d 1110 (2004). Moreover, we can find no timely objection by plaintiff to the introduction of the expert report or any request for a hearing on qualifications in advance of consideration of the motion. See Kemp ex rel. Wright v. State of New Jersey, 174 N.J. 412, 426-27, 809 A.2d 77 (2002). In any event, it is not clear that Judge Donaldson relied on the report in reaching the conclusion she did based on the facts presented.
[5] Plaintiff does not dispute Condo's assertion that plaintiff's request to do the paperwork himself was refused because Cherry Hill did not believe the request was "sincere." As a result, this case does not turn on the response he received to the statement he would perform the service himself.